IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Frankie L. Brown, ) | Case No. 8:10-cv-1816-HMH-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Wachovia Bank, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on Defendant's motion for summary judgment [Doc. 44]. Plaintiff, proceeding pro se, brought this action generally alleging claims of misrepresentation and breach of contract, as well as violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, 1692a–1692p, and the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 to -170. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pre-trial matters involving litigation by individuals proceeding pro se and submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff opened a checking account with Defendant on or about March 14, 2007. [Doc. 1-1 at 5, ¶ 7; Doc. 44-2 at 21–22, 29, 121.] In May 2010, Plaintiff's checking account became overdrawn after he made purchases on his debit card that exceeded the amount of funds on deposit in the account. [*See* Doc. 1-1 at 6, ¶ 9; Doc. 44-2 at 39–40.] Plaintiff does not dispute that he owes Defendant the outstanding balance of overdrawn funds,

approximately $1,249.51.[1]  [Doc 44-2 at 73.]  Plaintiff has not paid or offered to pay Defendant any portion of the outstanding balance.  [*Id.* at 41, 73.]

Plaintiff alleges employees of Defendant called Plaintiff at his workplace about his overdrawn checking account.  [Doc. 1-1 at 6, ¶ 9; Doc. 44-2 at 44–45.]  According to Plaintiff, Defendant contacted him by telephone during April, May, and early June 2010 [Doc. 44-2 at 45, 49, 52, 66; *see* Doc. 1-1 at 6, ¶ 9], and each caller identified himself or herself as an employee of Defendant and stated he or she was contacting Plaintiff about resolving Plaintiff's overdrawn checking account with Defendant [Doc. 44-2 at 47, 49–50, 68–69].  During one of the collection calls, Plaintiff alleges Defendant's employee told Plaintiff that Defendant could contact Plaintiff about the debt owed "any time" and/or "anywhere."  [Doc. 1-1 at 6, ¶ 9; Doc. 44-2 at 52–53, 122.]  Plaintiff believed this statement was incorrect at the time it was made, and Plaintiff alleges that, immediately after this phone call concluded, he filed a complaint with the U.S. Office of the Comptroller of the Currency ("OCC"), asserting the alleged impropriety of the phone call he had received from Defendant's employee.  [Doc. 44-2 at 57–60, 89–91; *see* Doc. 36-2.]  Plaintiff was contacted in early June 2010 by another employee of Defendant about resolving the overdrawn account, and Plaintiff told Defendant's employee not to contact him at work.  [Doc. 44-2 at 63–66; *see* Doc. 1-1 at 6, ¶ 9.]  Plaintiff filed another complaint with the OCC,

---

[1] Plaintiff asserted at his deposition that Defendant may owe him money from overdraft charges of $35 per occurrence.  [Doc. 44-2 at 43.]  Plaintiff sought leave to amend the Complaint to add a claim of "[u]nfair and illegal assessment and collection of excessive overdraft fees"; Plaintiff alleged Defendant reordered purchases such that the largest purchase was paid first, which was a "manipulative practice . . . intentionally designed to maximize overdraft fee revenue."  [Doc. 38.]  The Court denied Plaintiff's motion to amend the Complaint because Plaintiff filed the motion to amend well after the deadline for amendments had passed and Plaintiff failed to demonstrate good cause to amend the Complaint.  [Doc. 42; *see also* Doc. 47 (motion to reconsider motion to amend); Doc. 53 (text order denying motion to reconsider).]

alleging impropriety as to the June 2010 call. [Doc. 44-2 at 63, 91–92; see Doc. 36-2.] Plaintiff received no further collection calls from Defendant related to Plaintiff's overdrawn account. [Doc. 44-2 at 64–66.] On June 11, 2010, Defendant wrote Plaintiff a letter apologizing for any inconvenience caused by the telephone calls. [*Id.* at 65, 73–74, 123.]

Plaintiff filed the instant lawsuit in the South Carolina Court of Common Pleas on June 14, 2010. [Doc. 1-1 at 2.] Defendant filed a notice of removal on July 13, 2010. [Doc. 1.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Fair Debt Collection Practices Act**

Plaintiff contends Defendant committed "numerous violations of [the] Fair Debt Collection Practice[s] Act." [Doc. 1-1 at 6, ¶ 11; *see id.* at 5, ¶ 2.] Defendant argues it is exempt from liability under the FDCPA because it is not a"debt collector" under the terms of the FDCPA. [Doc. 44-1 at 5–8.] The Court agrees that Defendant is not subject to the FDCPA because it is not a "debt collector" as that term is defined in the FDCPA.

As stated in the preamble, the FDCPA's purpose is "to eliminate abusive debt collection practices *by debt collectors*, to insure that those debt collectors who refrain from using abusive practices are not competitively disadvantaged, and to promote consistent

State action to protect consumers against debt collection abuses."[2] 15 U.S.C. § 1692(e) (emphasis added). For purposes of the FDCPA, debt collector is defined as (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[3] *Id.* § 1692a(6). Accordingly, creditors[4] collecting their own debts are not "debt collectors" for purposes of the FDCPA and are exempt from the FDCPA's provisions. *Glover v. Univ. Motor Co.*, No. 3:08-2254, 2010 WL 234903, at * 3 (D.S.C. Jan. 15, 2010); *Serfass v. CIT Group/Consumer Fin., Inc.*, No. 8:07-90, 2008 WL 351116, at *3 (D.S.C. Feb. 7, 2008) (finding the defendant was not regulated by the FDCPA because the defendant was a creditor collecting its own debts); *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003) ("[C]reditors are not liable under the FDCPA." (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985)));

---

[2] Other relevant provisions of the FDCPA state, "A *debt collector* may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d (emphasis added); "A *debt collector* may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e (emphasis added); "A *debt collector* may not use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f (emphasis added).

[3] The FDCPA's definition of "debt collector" expressly excludes officers and employees of a creditor who collect debts for the creditor in the creditor's name, as well as "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(A)–(B).

[4] The FDCPA defines "creditor" as

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4).

*Davis v. Dillard Nat'l Bank*, No. 1:02-546, 2003 WL 21297331, at *4 (M.D.N.C. June 4, 2003) ("Crediting institutions, such as banks, are not debt collectors under section 1692a(6)(A) because they collect their own debts and are in the business of lending money to consumers." (citing *Thomasson v. Bank One, La., N.A.*, 137 F. Supp. 2d 721, 724 (E.D. La. 2001); *Meads v. Citicorp Credit Servs., Inc.*, 686 F. Supp. 330, 333 (S.D. Ga. 1988))).

Here, under the facts as alleged by Plaintiff, Defendant does not meet the FDCPA's definition of debt collector and, as a result, is not subject to the provisions of the FDCPA. Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant meets the first prong of the debt collector definition; and there are no facts in the record that suggest the principal purpose of Defendant's business is the collection of debts. Further, Plaintiff failed to demonstrate a genuine issue of material fact as to whether Defendant meets the definition's second prong. Defendant indicated it does not regularly collect or attempt to collect debts due or owed another—Defendant collects or attempts to collect only its own debts. [Doc. 44-1 at 7.] Plaintiff's deposition testimony does not contradict Defendant's assertion; Plaintiff testified that each call he received was from an employee of Defendant attempting to collect a debt owed to Defendant. [Doc. 44-2 at 68–69, 76–77, 94.] Consequently, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact to overcome Defendant's motion for summary judgment on this issue and recommends that Defendant's motion for summary judgment be granted as to this claim.

**South Carolina Unfair Trade Practices Act**

Plaintiff argues Defendant violated the SCUTPA by making "knowing and willful misstatements and failure to comply with its contract," which Plaintiff contends "are deceptive and unfair practices that have been and can be repeated on other members of

the public" and have damaged Plaintiff. [Doc. 1-1 at 6, ¶ 13.] Defendant argues there is no evidence in the record demonstrating the elements required to establish a SCUTPA claim. [Doc. 44-1 at 8.] The Court agrees that the record fails to demonstrate that Plaintiff can establish a SCUTPA claim.

As the South Carolina courts have stated,

> To recover in an action under the SCUTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s).[5]

*Estate of Carr ex rel. Bolton v. Circle S. Enters., Inc.*, 664 S.E.2d 83, 89 (S.C. Ct. App. 2008) (citing S.C. Code Ann. §§ 39-5-10 to -560) (footnote added); *see Daisy Outdoor Adver. Co., Inc. v. Abbott*, 473 S.E.2d 47, 49 (S.C. 1996) (citing *Noack Enters., Inc. v. Country Corner Interiors*, 351 S.E.2d 347 (S.C. Ct. App. 1986)) ("Since 1986, South Carolina courts have required that a plaintiff brining a private cause of action under UTPA allege and prove the defendant's actions adversely affected the public interest."). "A trade practice is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is 'deceptive' when it has a tendency to deceive." *Young v. Century Lincoln-Mercury, Inc.*, 396 S.E.2d 105, 108 (S.C. Ct. App. 1989) (citing *Harris v. NCNB*, 355 S.E.2d 838 (N.C. Ct. App. 1987)), *aff'd in part & rev'd in part on other grounds*, 422 S.E.2d 103 (S.C. 1992).

---

[5] The SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

To establish the defendant committed an unfair or deceptive trade practice, the plaintiff must allege facts that demonstrate the defendant's conduct went beyond negligence or a breach of contract. *See, e.g.*, *Clarkson v. Orkin Exterminating Co., Inc.*, 761 F.2d 189, 191 (4th Cir. 1985) (stating "[t]he plaintiff need not show intentional deception, but a plaintiff cannot prevail without showing at least a potential of deception" and finding that the plaintiff had shown only that the defendant's representative was negligent or inept and that the plaintiff "knew the true state of affairs"); *Columbia East Assocs. v. Bi-Lo*, 386 S.E.2d 259, 263 (S.C. Ct. App. 1989) ("[A] deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the [South Carolina] Unfair Trade Practices Act." (citing *Key Co., Inc. v. Fameco Distribs.*, 357 S.E.2d 476 (S.C. Ct. App. 1987))). Further, "South Carolina law regards the public interest prong of the [SC]UTPA inquiry as satisfied by evidence of a potential for repetition of the unfair or deceptive act," *Daisy Outdoor Adver.*, 473 S.E.2d at 50; a plaintiff cannot recover for a private wrong under the SCUTPA, *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 582 (D.S.C. 2003). As the Fourth Circuit has noted:

> While every private dispute doubtless has remote public ramifications, these cannot be held to satisfy the element of injury to the public interest which is a prerequisite to any recovery under the UTPA. Were the rule otherwise, every ordinary commercial dispute would become a candidate for the extraordinary remedies provided by the Act.

*Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 507–08 (4th Cir. 1992).

Finally, to establish a claim of a violation of the SCUTPA, the plaintiff must demonstrate an "ascertainable loss of money or property" resulting from "the use or

employment by another person of an unfair or deceptive method." *See* S.C. Code Ann. § 39-5-140(a); *see also Collins Holding Corp. v. Defibaugh*, 646 S.E.2d 147, 150 (S.C. Ct. App. 2007) ("The UTPA only creates causes of action in those suffering a loss as a result of a deceptive act."). "Recoverable damages include compensation for all injury to plaintiff's property or business which is the natural and probable consequence of defendant's wrong." *Collins Holding Corp.*, 646 S.E.2d at 149.

Here, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant engaged in any unfair or deceptive trade practice, and therefore, the Court finds Plaintiff cannot establish any of the three elements of a SCUTPA claim. Plaintiff alleges Defendant made "knowing and willful misstatements" [Doc. 1-1 at 6, ¶ 13], but Plaintiff failed to identify any misstatement made by Defendant.[6] Moreover, Plaintiff alleges Defendant "fail[ed] to comply with its contract" [*id.*], but Plaintiff failed to identify how Defendant failed to comply with any contract. Further, as stated above, even if Plaintiff demonstrated that Defendant failed to comply with a contract, a breach of contract alone is insufficient to establish Defendant engaged in an unfair or deceptive trade practice.

Even if Plaintiff could establish Defendant engaged in an unfair or deceptive trade practice, Plaintiff failed to demonstrate a genuine issue of material fact as to whether the allegedly unfair or deceptive practices affect the public interest or whether Plaintiff suffered monetary or property loss as a result of the allegedly unfair or deceptive practices. There is simply no evidence in the record demonstrating the allegedly unfair or deceptive acts of

---

[6] Liberally construing the Complaint, Plaintiff alleges Defendant's employee made a misstatement when the employee allegedly told Plaintiff that Defendant could call Plaintiff at any time and at any phone number. However, Plaintiff failed to demonstrate that this alleged misstatement was unfair or deceptive. For example, Plaintiff testified at his deposition that he knew this alleged misstatement was illegal, improper, and unethical [Doc. 44-2 at 59], which detracts from an argument that the alleged misstatement was deceptive.

Defendant have the potential for repetition. To the contrary, Plaintiff testified he had no knowledge or evidence any other customer of Defendant had been contacted by an employee of Defendant in the same manner as alleged by Plaintiff. [Doc. 44-2 at 94, 112–13.] Further, Plaintiff has identified no ascertainable loss of money or property resulting from the telephone calls he received from Defendant about his overdrawn account. Plaintiff testified in his depositions that his alleged losses were associated with headaches; time away from work; stress; "having to take calls at work"; "time spent drawing up the lawsuit and stuff"; and "worrying about his boss knowing" he was getting the calls. [Doc. 44-2 at 86, 95.] However, Plaintiff also testified he was never disciplined, demoted, or had his pay docked or decreased as a result of receiving the telephone calls from Defendant at work; Plaintiff testified at his deposition that his compensation only increased at his place of employment during the time relevant to this action. [*Id.* at 25, 84–86.]

Therefore, because Plaintiff failed to demonstrate a genuine issue of material fact as to whether Defendant engaged in an unfair or deceptive trade practice that resulted in a monetary or property loss to Plaintiff and is capable of repetition, the Court finds Plaintiff cannot prevail on his claim that Defendant violated the SCUTPA and recommends Defendant's motion for summary judgment be granted as to this claim.

**Misrepresentation**

Plaintiff contends Defendant made a misrepresentation to Plaintiff, although it is unclear what Plaintiff claims was the misrepresentation. In outlining his misrepresentation claim, Plaintiff refers to only one misrepresentation but presents two statements that could be the basis of his misrepresentation claim. [*See* Doc. 1-1 at 6, ¶ 9.] First, Plaintiff alleges he asked Defendant to stop placing collection calls to Plaintiff at Plaintiff's place of

employment, and Defendant agreed to stop calling Plaintiff at work. [*Id.*] Plaintiff alleges that, after this exchange, Defendant called Plaintiff at his place of employment on three additional occasions. [*Id.*] Accordingly, Plaintiff could be referring to Defendant's agreement to stop calling Plaintiff at work as the misrepresentation because Plaintiff alleges that Defendant failed to honor its agreement.

Second, Plaintiff alleges that during a collection call, an employee of Defendant told Plaintiff that Defendant "'could [call Plaintiff] whenever and where ever they want to as long as [Plaintiff] owed them money.'" [*Id.*] Plaintiff could be referring to the statement by Defendant's employee as the misrepresentation because Plaintiff includes this allegation in the Complaint as part of his misrepresentation claim [*id.*], and Plaintiff testified at his deposition that he knew at the time the employee made the statement that it was illegal for Defendant to call Plaintiff whenever and wherever Defendant wanted [Doc. 44-2 at 59]. With respect to either possible alleged misrepresentation, Plaintiff failed to demonstrate a genuine issue of material fact as to the existence of the elements of a misrepresentation claim.

Further, Plaintiff presented his claim as one for "misrepresentation" and essentially recited the elements of fraudulent misrepresentation. Out of an abundance of caution, and liberally construing the pro se Complaint, the Court has considered Plaintiff's claim as one for negligent misrepresentation and one for fraudulent misrepresentation.

### *Negligent Misrepresentation*

South Carolina law recognizes an action for negligent misrepresentation "where the misrepresented fact(s) induced the plaintiff to enter a contract or business transaction."

*Gilliland v. Elmwood Props.*, 391 S.E.2d 577, 580 (1990). To establish a negligent misrepresentation claim, a plaintiff must demonstrate six elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

*deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 405 (S.C. Ct. App. 2000). A negligent misrepresentation claim cannot be based on "unfulfilled promises or statements as to future events." *Tom Hughes Marine, Inc. v. Am. Honda Motor Co.*, 219 F.3d 321, 324–25 (4th Cir. 2000) (internal quotation omitted). An exception to this general rule "exists only when a person makes a promise having at the time no intention of keeping [the] agreement." *Id.* at 325 (internal quotation marks omitted).

### *Fraudulent Misrepresentation*

In South Carolina, to establish a cause of action for fraudulent misrepresentation, a plaintiff must establish the following elements:

> (1) a representation; (2) the falsity of the representation; (3) the materiality of the representation; (4) knowledge of its falsity, or reckless disregard for its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*First Union Mortgage Corp. v. Thomas*, 451 S.E.2d 907, 912 (S.C. Ct. App. 1994) (citing *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993)). Failure to establish any one element is fatal to the claim. *Ardis*, 431 S.E.2d at 269.

### *Analysis*

As noted above, Plaintiff failed to distinctly identify a representation of fact made by Defendant that forms the basis of Plaintiff's misrepresentation claim. Additionally, Plaintiff failed to identify a representation that was false[7] or to demonstrate that Plaintiff justifiably relied on the representation resulting in a pecuniary loss. As Defendant points out, if the alleged misrepresentation is Defendant's employee's statement that Defendant could call Plaintiff at any time and at any phone number, Plaintiff cannot establish that he justifiably relied on the statement because Plaintiff testified at his deposition that he knew the statement was "illegal and improper and unethical." [Doc. 44-2 at 59.] Further, Plaintiff failed to demonstrate that he justifiably relied on Defendant's representation that it would not call him job again. Importantly, Plaintiff also failed to demonstrate he was injured by any alleged misrepresentation. [*See* Doc. 44-2 at 25, 84–86 (relevant portions of Plaintiff's deposition testimony establishing Plaintiff was never disciplined, demoted, or had his pay docked or decreased as a result of receiving the telephone calls from Defendant at work and his compensation only increased at his place of employment during the time relevant to this action).] Accordingly, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact with respect to his misrepresentation claim and recommends that Defendant's motion for summary judgment be granted as to this claim.

**Breach of Contract**

---

[7] Arguably, Plaintiff alleges that Defendant represented that it would no longer make collection calls to Plaintiff's place of employment and this representation was false because Defendant continued to call Plaintiff at work after making the representation.

Plaintiff argues Defendant committed a breach of contract by breaking promises and representations Defendant made to Plaintiff when Plaintiff engaged in a checking account relationship with Defendant in 2007. [Doc. 1-1 at 5, ¶ 7.] Defendant contends that, because Plaintiff was unable to identify any specific contract or agreement Defendant breached, Plaintiff's breach of contract claim fails as a matter of law. [Doc. 44-1 at 13–14.] The Court agrees that Plaintiff failed to demonstrate a genuine issue of material fact as to whether Defendant breached any contract between the parties.

Under South Carolina law, a plaintiff must establish three elements to recover for a breach of contract: (1) the binding contract entered into by the parties, (2) the defendant's breach of or unjustifiable failure to perform the contract, and (3) the damage the plaintiff suffered as a direct and proximate result of the defendant's breach or failure to perform. *Tomlinson v. Mixon*, 626 S.E.2d 43, 49 (S.C. Ct. App. 2006) (Anderson, J., dissenting) (citing *Fuller v. Eastern Fire & Cas. Ins. Co.*, 124 S.E.2d 602 (S.C. 1962)). Here, Plaintiff failed to demonstrate a genuine issue of material fact as to any of these elements. Plaintiff failed to establish that a binding contract was entered into by the parties, although Defendant admits Plaintiff's checking account with Defendant "would have been governed by the express terms and conditions set forth in the applicable deposit agreement or account agreement" [Doc. 4 ¶ 7.] Even assuming a contractual relationship existed between the parties, Plaintiff failed to indicate which terms of a specific contract Defendant breached. Finally, as described above, Plaintiff failed to establish that he suffered any damage as a result of Defendant's actions. Therefore, the Court finds Plaintiff cannot prevail on his claim of breach of contract and recommends that Defendant's motion for summary judgment be granted as to this claim.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment [Doc. 44] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 30, 2011
Greenville, South Carolina